UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

TIMOTHY SAMPSON #492307,

        Plaintiff,

v.

CARLA DAVIS,

        Defendant.
_____/

Case No. 2:19-cv-176

Hon. Hala Y. Jarbou
U.S. District Judge

**REPORT AND RECOMMENDATION**

**I.    Introduction**

State prisoner Timothy Sampson initiated this civil rights action on September 9, 2019 by filing a verified complaint. (ECF No. 1.) The only defendant in this case is Corrections Officer (CO) Clara Davis. Sampson alleges that, on July 21, 2019, CO Davis issued him a false Class I misconduct ticket in retaliation for his threat to file a grievance against her. Sampson alleges that these events took place at the Chippewa Correctional Facility (URF).

This report and recommendation (R&R) addresses CO Davis's motion for summary judgment and supporting brief. (ECF Nos. 18, 19.) Davis argues that Sampson failed to properly exhaust his administrative remedies before he filed his claim against her. Documents supplied by Davis confirm that Sampson did not pursue a grievance through Step III of the Michigan Department of Corrections (MDOC) grievance process at a time relevant to this complaint. (ECF No. 19-3

1

(MDOC Prisoner Step III Grievance Report).) That bit of information does not put an end to the issue here. In his verified complaint, Sampson attested that the MDOC failed to provide him a hearing where he could argue that the misconduct ticket was retaliatory. (ECF No. 1, PageID.6.) To address this issue, CO Davis asserts that, in situations where a misconduct hearing is not provided, prisoners are required to file a grievance to properly exhaust the issue. (ECF No. 19, PageID.87-88.)

Sampson has not responded to Davis's motion for summary judgment.

After reviewing the pleadings and associated documents, the undersigned concludes that there is a genuine issue of fact as to whether Sampson could have properly exhausted administrative remedies before filing the claim in this case. The record before the Court indicates that Sampson actually might have exhausted his administrative remedies. Accordingly, the undersigned respectfully recommends that the Court deny CO Davis's motion for summary judgment. However, based upon the facts of this case, the undersigned notes that this issue may best be decided in an evidentiary hearing pursuant to *Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015).

## II.     Summary of Plaintiff's Allegations

On July 21, 2019, Sampson was in URF's small common yard when CO Davis allegedly stopped him to harass him. (ECF No. 1, PageID.6.) During this interaction, Sampson told CO Davis that he would file a grievance against her for abuse of her authority. (*Id.*) In response, CO Davis said that Sampson would regret threatening her with filing a grievance if he were to repeat it. (*Id.*) Sampson says that later that day, CO Davis had another prisoner write her a letter, posing as Sampson, seeking

to bribe her. (*Id.*, PageID.6-7.) Sampson says that CO Davis then issued him a false Class I misconduct ticket based upon bribery.

### III. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury[1] or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### IV. Exhaustion of Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be

---

[1] Disputed issues of fact regarding exhaustion under the Prison Litigation Reform Act may be decided in a bench trial and need not be submitted to a jury. *Lee*, 789 F.3d at 678.

sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). In rare circumstances, an administrative remedy will be considered unavailable where officers are unable or consistently unwilling to provide relief,

4

where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance [or other administrative] process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. ___, 136 S.Ct. 1850, 1859-60 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737*)*. And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id*. When institutions are provided adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 2007 U.S. Dist. LEXIS 81101 at *12.

The most common procedure through which a prisoner in MDOC custody exhausts his administrative remedies is the grievance procedure set forth in Michigan Dept. of Corrections (MDOC) Policy Directive 03.02.130 (effective on July 9, 2007, superseded on March 18, 2019. (ECF No. 19-2.) Where grievance procedures are not available because the issue presented is non-grievable, exhaustion of prison grievance procedures is not required. It is well-established that a prisoner "cannot

be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004). However, where other administrative remedies are available, the prisoner is required to exhaust those available remedies prior to filing a federal lawsuit.

V. Analysis

For the following reasons, the undersigned concludes that there is a genuine issue of fact as to whether Sampson could have exhausted his claim against CO Davis or did so.

As noted in the introduction, documents supplied by CO Davis confirm that Sampson did not pursue a grievance through Step III of the MDOC grievance process at a time relevant to this complaint. (ECF No. 19-3 (MDOC Prisoner Step III Grievance Report).) Sampson's complaint offers an explanation for this shortcoming. A portion of his complaint is shown below.

> IV. EXHAUSTION OF AVAILABLE ADMINISTRATIVE REMEDIES:
> 7. THE PLAINTIFF WAS WRITTEN A MAJOR MISCONDUCT AND PLACED IN ADMINISTRATIVE SEGREGATION. PLAINTIFF NEVER RECEIVED A HEARING ON THE MAJOR MISCONDUCT BECAUSE THE TIME LIMITS WERE INTENTIONALLY ALLOWED TO EXPIRED. PURSUANT TO MDOC POLICY DIRECTIVE 03.02.130 (F)(2), PROHIBITS PLAINTIFF FROM FILING GRIEVANCES RELATING TO MAJOR MISCONDUCTS AND/OR HEARINGS ON MAJOR MISCONDUCTS. THEREFORE, SINCE PLAINTIFF NEVER HAD A HEARING, THERE WERE NO AVAILABLE ADMINISTRATIVE REMEDIES TO BE EXHAUSTED BY PLAINTIFF. PLAINTIFF ASSERTS THAT THE EXHAUSTION REQUIREMENTS ARE INAPPLICABLE TO THIS CIVIL RIGHTS ACTIONS.

(ECF No. 1, PageID.6.)

In her motion for summary judgment, CO Davis does not challenge Sampson's statement that he was not provided a misconduct hearing. (ECF No. 19, PageID.87-88.) Instead, CO Davis contends that in the absence of a hearing on the misconduct

6

ticket, Sampson should have pursued his complaint through the grievance process. (*Id.* (citing *Ali v. Simmons*, Case No. 1:19-cv-126, 2020 WL 6597562, at *5 (W.D. Mich. May 5, 2020) ("If Plaintiff was not afforded a [misconduct] hearing, he could have filed a grievance"), *report and recommendation adopted in part*, Case No. 1:19-cv-126, 2020 WL 5626921 (W.D. Mich. Sept. 21, 2020).

CO Davis's reliance on the quote from *Ali* is misplaced because it is dicta and because it conflicts with the Sixth Circuit's rule on exhausting claims based on misconduct tickets.

The Sixth Circuit holds that "Michigan's rules provide that the only avenue for challenging such [misconduct] reports is a hearing." *Siggers v. Campbell*, 652 F.3d 681, 694 (6th Cir. 2011). Neither the Sixth Circuit nor this Court has established a requirement that a prisoner must exhaust his or her claim via a grievance when the prisoner is denied an opportunity to have hearing on a misconduct report.

In addition, CO Davis has failed to provide any evidence that would show that Sampson received a misconduct hearing and failed to raise the issue of retaliation. In fact, Davis's motion raises more questions than it answers. If Sampson were charged with a Class I misconduct, he would be entitled to a hearing. *See* MDOC Policy Directive (PD) 03.03.105, ¶ AA (effective April 9, 2012).[2] A prisoner charged with a Class II misconduct is entitled to a hearing unless he or she waive the hearing

---

[2] This PD is available at https://www.michigan.gov/documents/corrections/0303105_382060_7.pdf (last visited May 11, 2021).

and pleads guilty in writing. *Id.*, ¶ OO. The same rule applies to Class III misconduct tickets. *Id.*, ¶ ZZ.

The only evidence in the record addressing whether Sampson received a hearing is Sampson's verified complaint, where Sampson swore that he did not. (ECF No. 1, PageID.6.) Defendant CO Davis simply does not explain what happened with the misconduct ticket. The Court is left guessing (1) whether a ticket was written against Sampson, (2) what class it was, (3) whether he had a hearing, and (4) if he did not have a hearing, why not? Therefore, the undersigned concludes that there is a genuine issue as to whether Sampson could have properly exhausted his claim.

The undersigned notes that Sampson might have exhausted his claim. In his verified complaint, Sampson attested that he was effectively exonerated. (*Id.*, PageID.7.) As shown in the excerpt below, Sampson failed to elaborate as to what facts were outside of CO Davis's control and whether the denial of a hearing was a result of a reviewing officer finding in Sampson's favor regarding the misconduct report.

> 14. DEFENDANT DAVIS DID NOT KNOW OR EXPECT AT THE TIME SHE COMMITTED THE UNCONSTITUTIONAL ACTION, FILING A FALSE MISCONDUCT CHARGE, THAT PLAINTIFF WOULD BE UNOFFICIALLY EXONERATED OF THAT CHARGE. ONLY BECAUSE OF CIRCUMSTANCES OUTSIDE OF THE DEFENDANT'S CONTROL STOPPED HER ATTEMPT AT RETALIATION FROM BEING FULLY PERFECTED. BUT EVEN HAD THE DEFENDANT PERFORMED THE EXACT SAME ACTION AND THE HEARING WAS HELD AND THE HEARING OFFICER NOT CLEARED PLAINTIFF OF THE FALSE MISCONDUCT CHARGES, THE PLAINTIFF COULD HAVE FACED MORE TIME IN SEGREGATION AND/OR LOSS OF GOOD-TIME CREDITS. (WHICH IS ALSO AN ACTIONABLE HARM). PLAINTIFF'S RIGHT TO BE FREE FROM RETALIATION, IN THE FORM OF THE ISSUANCE OF A FALSE MAJOR MISCONDUCT AGAINST THE EXERCISE OF HIS FIRST AMENDMENT RIGHTS IS/WAS CLEARLY ESTABLISHED AND DEFENDANT DAVIS IS NOT ENTITLED TO QUALIFIED IMMUNITY.

(ECF No. 1, PageID.7.) If a reviewing officer denied Sampson a hearing because the officer ruled in his favor, then Sampson probably did exhaust his claim. Under

8

*Siggers*, 652 F.3d at 694, Sampson would have needed to utilize the hearing system to raise the retaliation issue. But if a reviewing officer ruled in Sampson's favor before a hearing, then Sampson might have exhausted his claim – albeit unknowingly. To address this issue, the parties would have to explain what happened with the ticket and why. The record is, however, insufficiently developed for the undersigned to conclude that a hearing officer reviewed the misconduct report and ruled in Sampson's favor.

For foregoing reasons, the undersigned concludes that there is a genuine issue of fact. The genuine issue of fact, in this case, may best be decided during an evidentiary hearing pursuant to *Lee*, 789 F.3d at 678.

## VI. Recommendation

The undersigned respectfully recommends that this Court deny CO Davis's motion for summary judgment. If the Court accepts this recommendation, the First Amendment retaliation claim will remain.

Dated: May 12, 2021

/s/ *Maarten Vermaat*
MAARTEN VERMAAT
U. S. MAGISTRATE JUDGE

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).