UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

TIMOTHY E. SAMPSON, #492307,          Case No. 2:19-cv-176

        Plaintiff,          Hon. Jane M. Beckering
                                      U.S. District Judge

v.

CARLA DAVIS,

        Defendant.
_____/

**REPORT AND RECOMMENDATION**

This Report and Recommendation (R&R) addresses Defendant Corrections Officer (CO) Carla Davis's motion for summary judgment (ECF No. 28).

Plaintiff — state prisoner Timothy E. Sampson — filed suit pursuant to 42 U.S.C. § 1983 on September 9, 2019. In his verified complaint, Webb asserted that while he was incarcerated at the Chippewa Correctional Facility (URF) in Kincheloe, Michigan, CO Davis retaliated against him in violation of his First Amendment rights. (ECF No. 1, PageID.7-8.) Specifically, Sampson stated that he was in one of URF's yards when Davis approached and harassed him. (*Id.*, PageID.6.) Sampson says that when he threatened to file a grievance against Davis for harassing him and abusing her authority, Davis told him that the next time he threatened her with a grievance, he would regret it. (*Id.*) After Sampson reported the incident to an unknown URF sergeant, Davis allegedly filed a false Class I misconduct ticket against Sampson for bribery. (*Id.*, PageID.6-7.)

On December 30, 2020, CO Davis moved for summary judgment based on Sampson's failure to exhaust his administrative remedies. (ECF No. 18.) Sampson did not respond to Davis's motion for summary judgment, but this Court denied the motion because there was a genuine issue of fact concerning whether any administrative remedies were available to Sampson. (ECF No. 20, PageID.132-135 (R&R); ECF No. 22 (Order Approving and Adopting R&R).)

Davis now moves for summary judgment for the second time, asserting that Sampson cannot satisfy his retaliation claim because: (1) his complaint regarding CO Davis's verbal abuse was frivolous and did not constitute protected conduct, and (2) he cannot show a sufficient causal connection between Davis's retaliatory motive and her issuance of the Class I misconduct ticket. Once again, Sampson did not file a response to Davis's motion for summary judgment.

The undersigned respectfully recommends that the Court grant Davis's motion for summary judgment and dismiss the case because Sampson's threat to file a grievance and subsequent complaint against her were frivolous. The undersigned further recommends that the Court dismiss the case because Sampson has not filed anything with the Court in this matter since December 7, 2020 (ECF No. 15) and has therefore failed to prosecute his claim.

I. **Factual Allegations**

In his verified complaint, Sampson says that on July 21, 2019, he was in one of URF's common yards when CO Davis stopped and harassed him. (ECF No. 1, PageID.6.) Sampson told Davis that he was going to file a grievance against her for

"abusing her authority, threats towards him and harassment." (*Id.*) CO Davis responded by telling Sampson that the next time he threatened to file a grievance against her, "he would regret it and it will come to bite him in the ass." (*Id.*) Davis told Sampson his grievance would not change anything at URF because the URF officers run the prison. (*Id.*)

Sampson says that he reported this encounter to an unknown URF Sergeant before returning to his unit. (*Id.*) That afternoon, Sampson was moved to a different housing unit where he was placed on non-bond toplock, also known as temporary segregation. (*Id.*) He was eventually moved to administrative segregation. (*Id.*) He later found out that CO Davis had written a Class I Misconduct against him for attempted bribery.[1] (*Id.*, PageID.6-7.)

According to Sampson, that Class I Misconduct was fabricated. (*Id.*) In fact, he says that CO Davis recruited another prisoner to write a letter purporting to be Sampson, which she attached to the misconduct as proof of the attempted bribery.[2] (*Id.*, PageID.7.) He says that CO Davis did this to retaliate against him for threatening to file a grievance against her and reporting her to the Sergeant. (*Id.*)

---

[1] Sampson's Misconduct Sanction Screening Form indicates that he was placed in temporary segregation pending a hearing on the misconduct ticket. (ECF No. 29-2, PageID.172.) But Sampson's complaint suggests that his transfer from temporary segregation to administrative segregation was a result of his conduct in temporary segregation. (ECF No. 1, PageID.6.) Sampson says that he remained in segregation for eighteen days, and that he lost privileges. (*Id.*)

[2] During a deposition on September 29, 2021, Sampson conceded that this assertion was speculation, because someone had to have written the letter, and he did not believe that Davis was "stupid enough to actually write her own letter." (ECF No. 29-4, PageID.187.)

3

But Sampson says that he was never heard on the misconduct, and therefore never found guilty; he alleges that URF administrators intentionally allowed the time limit for a hearing on his misconduct ticket to expire. (*Id.*) Sampson says that if he had been heard on the misconduct and found guilty, he could have spent more time in segregation and lost his good-time credits. (*Id.*)

In an affidavit filed with the Court, CO Davis contests nearly all of Sampson's factual allegations. She says that she did not have a confrontation with Sampson on July 21, 2019 during which Sampson threatened to file a grievance against her. (ECF No. 29-3, PageID.175.) Instead, she says that on July 21, another inmate approached her with a letter, and told her it was from Sampson. (*Id.*, PageID.174-175.) CO Davis believed that it was from Sampson because it was consistent with letters Sampson had previously written her. (*Id.*, PageID.175.) She also believed that the letter was asking her to "neglect [her] duties or to perform a favor" in violation of prisoner rules. (*Id.*) CO Davis says that she wrote Sampson the Class I misconduct ticket on these bases alone. (*Id.*) Davis also provided the misconduct packet, which reflected that URF administration did not simply allow the time for a hearing to expire. (ECF No. 29-2, PageID.167.) Instead, the Hearings Investigator determined that there was insufficient evidence to find Sampson guilty of the misconduct and asked for the misconduct to be pulled on July 23, 2019. (*Id.*)

## II. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to

4

judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

### III.   Retaliation Analysis

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated by the protected conduct. *Id.* Here, CO Davis does not contest that she took an adverse action by issuing Sampson a misconduct ticket.

CO Davis first argues that she is entitled to summary judgment on Sampson's retaliation claim because his threat to file a grievance against Davis was frivolous, and therefore did not constitute protected conduct. (ECF No. 29, PageID.155-156.)

5

The Sixth Circuit has explained that "protected conduct includes a prisoner's 'undisputed First Amendment right to file grievances against prison officials on his own behalf.'" *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010) (quoting *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000)). "If the grievances are frivolous, however, this right is not protected." *Id.* Prisoners "cannot exercise that right in a manner that violates legitimate prison regulations or penological objectives." *Smith*, 250 F.3d at 1037. "'Abusive or manipulative use of a grievance system [is] not ... protected conduct,' and prison officials may take action in response to the prisoner's improper use of the grievance process as long as the response aligns with a legitimate penological goal." *Griffin v. Berghuis*, 563 F. App'x 411, 416 (6th Cir. 2014) (quoting *King v. Zamiara*, 680 F.3d 686, 699 (6th Cir. 2012)).

Beyond the general acknowledgment that grievances used to abuse or manipulate the grievance system are frivolous, limited authority exists as to what renders a grievance frivolous. As acknowledged by the Sixth Circuit in *Maben v. Thelen*, "cases in this Circuit appear to suggest that a prisoner's grievance is frivolous when the underlying grievance itself is *de minimis*." 887 F.3d 252, 264–65 (6th Cir. 2018) (collecting cases).[3] This Court has also found grievances involving "verifiably untrue" allegations to be frivolous. *Chrzan v. Mackay*, No. 1:19-CV-116, 2020 WL 7774741, at *3 (W.D. Mich. Nov. 30, 2020) (finding that the plaintiff's grievance was frivolous where a video recording of the underlying event contradicted the allegations

---

[3]   For example, in *White–Bey v. Griggs*, the Sixth Circuit found that a prisoner's grievance that he was provided a typewriter rather than a computer was frivolous. 43 Fed. App'x 792, 794 (6th Cir. 2002).

in the grievance), *report and recommendation adopted*, No. 1:19-CV-116, 2020 WL 7773419 (W.D. Mich. Dec. 30, 2020).

Here, CO Davis argues that because Sampson's threat to file a grievance and subsequent complaint were based on verbal abuse, Sampson was not engaged in protected conduct on July 21, 2019. (ECF No. 29, PageID.156 (first citing *Scott v. Kilchermann*, No. 99-1711, 2000 WL 1434456, at *1-2 (6th Cir. Sept. 18, 2000); and then citing *Carney v. Craven*, 40 F. App'x 48, 50 (6th Cir. 2002)).) In his complaint, Sampson asserted that CO Davis "stopped and harassed him" on that date. (ECF No. 1, PageID.6.) In his deposition, Sampson said that he believed CO Davis said something "derogatory." (ECF No. 29-4, PageID.186 ("And I — if I'm not mistaken, she said something — she said something derogatory back to me like it might not have been derogatory, I don't want to lie, that might be the wrong word to use, but basically I threatened her with a grievance, and I do recall her threatening me back.").)

As indicated by CO Davis, grievances complaining of verbal abuse in a prison setting are *de minimis* and therefore frivolous. *See Maben*, 887 F.3d at 264 (citing Kilchermann, 2000 WL 1434456, at *2).[4] And Sampson has not set forth any other basis for his July 21, 2019 complaints. As such, Sampson was not engaged in

---

[4] Though the undersigned relies on *Maben* for the proposition that grievances asserting verbal abuse are *de minimis*, and *Maben* cites *Kilchermann*, the undersigned notes that "*Kilchermann* is not persuasive to the extent it suggests that a grievance must assert a constitutional right in order to constitute protected conduct. This is not the proper standard for protected conduct." *Rayos v. Leavitt*, No. 1:20-CV-968, 2022 WL 873633, at *1 (W.D. Mich. Mar. 24, 2022).

7

protected conduct, and he cannot satisfy his retaliation claim. Because the undersigned finds that Sampson was not engaged in protected conduct on July 21, 2019, it is unnecessary to consider whether Sampson set forth sufficient evidence of a causal connection, or whether CO Davis set forth sufficient evidence that she would have issued the misconduct ticket regardless of Sampson's complaints against her.

### IV. Qualified Immunity

CO Davis also argues that she is entitled to qualified immunity because she did not violate any of Sampson's clearly established rights. (ECF No. 29, PageID.161.) "Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Phillips v. Roane Cty.*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Once a defendant raises the qualified immunity defense, the burden shifts to the plaintiff to demonstrate that the defendant officer violated a right so clearly established "that every 'reasonable official would have understood that what he [was] doing violate[d] that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Analyzing claims of qualified immunity involves a two-pronged test. *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013). First, the court must "determine if the facts alleged make out a violation of a constitutional right." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (1982)). Second, the court asks if the right at issue was "'clearly

established' when the event occurred such that a reasonable officer would have known that his conduct violated it." *Id.* (citing *Pearson*, 555 U.S. at 232). A court may address these prongs in either order. *Id.* (citing *Pearson*, 555 U.S. at 236). A government official is entitled to qualified immunity if the court finds that there is no constitutional violation, or that the right at issue was not clearly established. *See Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 440 (6th Cir. 2016).

In applying the first prong of the qualified immunity analysis, a court must identify "the specific constitutional right allegedly infringed" and determine whether a violation occurred. *Graham v. Connor*, 490 U.S. 386, 394 (1989). The court considers the state of the law at the second prong. As the Supreme Court has observed, "this Court's case law does not require a case directly on point for a right to be clearly established, [but] existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (internal quotation marks and original brackets omitted) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)). As explained by the Supreme Court:

> To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. The rule must be "settled law," *Hunter v. Bryant*, 502 U.S. 224, 228, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam), which means it is dictated by "controlling authority" or "a robust 'consensus of cases of persuasive authority,' " *al–Kidd*, supra, at 741–742, 563 U.S. 731, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (quoting *Wilson v. Layne*, 526 U.S. 603, 617, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)). It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. *See Reichle*, 566 U.S. at 666, 132 S.Ct. 2088. Otherwise, the rule is not one that "every reasonable official" would know. Id., at 664, 132 S.Ct. 2088 (internal quotation marks omitted).

9

> The "clearly established" standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him. The rule's contours must be so well defined that it is "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). This requires a high "degree of specificity." *Mullenix v. Luna*, 577 U.S. 7, ——, 136 S.Ct. 305, 309, 193 L.Ed.2d 255 (2015) (per curiam). We have repeatedly stressed that courts must not "define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." Plumhoff, supra, at 2023 (internal quotation marks and citation omitted). A rule is too general if the unlawfulness of the officer's conduct "does not follow immediately from the conclusion that [the rule] was firmly established." Anderson, supra, at 641, 107 S.Ct. 3034. In the context of a warrantless arrest, the rule must obviously resolve "whether 'the circumstances with which [the particular officer] was confronted ... constitute[d] probable cause.'" Mullenix, supra, at 309 (quoting Anderson, supra, at 640–641, 107 S.Ct. 3034; some alterations in original).

*District of Columbia v. Wesby*, 138 S. Ct. 577, 589–90 (2018).

Retaliating against prisoners for filing non-frivolous grievances violates their clearly established First Amendment rights. *Hill*, 630 F.3d at 472 (emphasis added) (citing Herron, 203 F.3d at 415). Because the undersigned finds that Sampson's threat to file a grievance and subsequent complaint against CO Davis for harassment were frivolous, Davis is entitled to qualified immunity.

## V. Failure to Prosecute

This is the second motion for summary judgment to which Sampson did not respond. In fact, Sampson has not had any communication with the Court in this matter since the letter filed December 7, 2020; he appears to have abandoned the prosecution of this case.

10

The Court has authority to dismiss a case under Fed. R. Civ. P. 41(b) when a plaintiff fails to prosecute his case or to comply with rules, or a court order. It is well settled that the Court has inherent authority to dismiss *sua sponte* an action with prejudice for failure to prosecute. *Link v. Wabash R. Co.*, 370 U.S. 626, 629–30 (1962). As the United States Supreme Court explained:

> The authority of a federal trial court to dismiss a plaintiff's action with prejudice because of his failure to prosecute cannot seriously be doubted. The power to invoke this sanction is necessary in order to prevent undue delays in the disposition of pending cases and to avoid congestion in the calendars of the District Courts. The power is of ancient origin, having its roots in judgments of nonsuit and non prosequitur entered at common law, e.g., 3 Blackstone, Commentaries (1768), 295—296, and dismissals for want of prosecution of bills in equity, e.g., *id.*, at 451. It has been expressly recognized in Federal Rule of Civil Procedure 41(b), which provides, in pertinent part:
> 
> "(b) Involuntary Dismissal: Effect Thereof. For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against him. * * *
> 
> Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction or for improper venue, operates as an adjudication upon the merits."
> 
> Petitioner contends that the language of this Rule, by negative implication, prohibits involuntary dismissals for failure of the plaintiff to prosecute except upon motion by the defendant. In the present case there was no such motion.
> 
> We do not read Rule 41(b) as implying any such restriction. Neither the permissive language of the Rule—which merely authorizes a motion by the defendant—nor its policy requires us to conclude that it was the purpose of the Rule to abrogate the power of courts, acting on their own initiative, to clear their calendars of cases that have remained dormant because of the inaction or dilatoriness of the parties seeking relief. The authority of a court to dismiss sua sponte for lack of prosecution has generally been considered an 'inherent power,' governed not by rule or statute but by the control necessarily vested in courts to

11

manage their own affairs so as to achieve the orderly and expeditious disposition of cases.

*Id.* (footnotes omitted).

In addition to recommending that the Court dismiss this case based on Davis's motion for summary judgment, the undersigned respectfully recommends that the Court dismiss this case based on Sampson's failure to prosecute.

## VI. Recommendation

The undersigned respectfully recommends that the Court grant Davis's motion for summary judgment and dismiss the case because Sampson's grievance was frivolous. The undersigned further recommends that the Court dismiss the case because Sampson has not filed anything with the Court in this matter since December 7, 2020 (ECF No. 15) and has therefore failed to prosecute his claim.

Dated:  May 12, 2022                                 /s/ *Maarten Vermaat*
                                                            MAARTEN VERMAAT
                                                            U.S. MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).